IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| RONNIE JOHNSON | § | |
| VS. | § | CIVIL ACTION NO. 9:16-CV-103 |
| MANAGEMENT AND TRAINING CORPORATION ("MTC") AND DANIEL DRISKELL | § § | |

MEMORANDUM OPINION AND ORDER

Plaintiff, Ronnie Johnson, represented by counsel, Reginald McKamie, filed the above-referenced civil rights action pursuant to 42 U.S.C § 1983 against defendants Management and Training Corporation ("MTC") and Warden David Driskell.

Factual & Procedural Background

Plaintiff filed an Amended Complaint on September 6, 2018, and brings this suit pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights under the Eighth and Fourteenth Amendment (docket entry no. 24). Plaintiff alleges the following:

> For a significant period of time prior to and including July 19, 2014 there existed in the housing area/dayroom area where Plaintiff was assigned to live at the Diboll Correctional Facility a condition which posed a substantial risk of harm to Plaintiff. An approximately 20-foot high suspended ceiling in the dayroom area, believed to be constructed of sheetrock, and the structure holding the ceiling, was in a dangerous, deteriorating condition for a number of months, becoming progressively worse with recurring rainfalls, with water leaking through the ceiling and condensation leakage from a HVAC unit.

> Prison inmates of the Diboll facility utilized mop buckets to catch the dripping water from the dayroom ceiling, as well as mops to mop the dayroom floor. Several inmates slipped, lost balance and/or fell on the wet floor. "MTC" was notified of the dangerous condition of the dayroom ceiling by means of requests for work orders from "MTC" Diboll staff, and grievances or written and verbal requests from inmates to repair the ceiling.

Inmates assigned to live in the housing location with the faulty dayroom ceiling were aware of the dangerous condition, as well as "MTC" staff assigned to work in or near the particular housing area. "MTC" maintenance department was aware of the condition of the dayroom ceiling. Defendant David Driskell was personally aware of the water leaking from the dayroom ceiling and the substantial risk of harm it presented to safety or welfare of inmates living in the housing area and using the dayroom. On several occasions during the months prior to July 19, 2014 Defendant Driskell personally came into the dayroom having the dangerous ceiling condition and observed the condition, and knew that water was leaking through the roof and dayroom ceiling onto the floor. On one or more occasions, prior to July 19, 2014 Defendant Driskell refused to allow inspectors to inspect the dayroom ceiling in question. Defendant Driskell failed to take any reasonable steps to abate the condition of the dayroom ceiling prior to July 19, 2014, but was deliberately indifferent to the risk of serious harm presented by the dayroom ceiling condition.

On July 19, 2014 Plaintiff, along with a number of other inmates were in the dayroom of the faulty ceiling. On that date the deteriorated dayroom ceiling and its structure suddenly collapsed, without warning, falling upon Plaintiff with significant force, causing significant physical injuries to Plaintiff, as well as severe mental and emotional distress and suffering.

Amended Complaint, pgs. 3-4 (docket entry no. 24). Plaintiff asserts a cause of action for deliberate

indifference:

Defendant David Driskell, having knowledge of a substantial risk of harm to Plaintiff due to the dangerous condition of the dayroom ceiling, acted with deliberate indifference to that risk over the course of a several-month period prior to and including July 19, 2014. David Driskell took no reasonable action to abate the serious risk of harm, by causing the timely repair of the dayroom ceiling prior to July 19, 2014, and/or causing Plaintiff to be reassigned to other housing quarters not having a dangerous dayroom ceiling condition, and/or shutting down the dayroom until the dangerous dayroom ceiling condition could be repaired. Instead of taking reasonable measures to abate the condition, and risk of harm to plaintiff, plaintiff alleges further that Defendant David Driskell adopted policy or custom of an unreasonable delay in taking reasonable action to abate the condition, or causing the abatement of the condition, and/or adopted a policy of custom of deliberate indifference to the condition and the risk of harm by ignoring it. Defendants David Driskell and "MTC" adopted a custom of tolerance or acquiescence to the said risk of harm to plaintiff and the violation of plaintiff's Eighth and

Fourteenth Amendment Rights. The inaction, policy or custom of "MTC" policy-maker David Driskell and "MTC" was the moving force behind the injuries sustained by plaintiff when the dayroom ceiling collapsed on June 19, 2014, and which evidenced a deliberate indifference to plaintiff's Eighth and Fourteenth Amendment rights under the United States Constitution; as well as Plaintiff's Eighth Amendment Right to be accorded reasonable personal safety while confined at the Diboll Correctional Facility. The circumstances show that Defendants "MTC" and David Driskell acted in a reckless disregard for the Eighth and Fourteenth Amendment Rights of Plaintiff.

Amended Complaint, pgs. 4-5 (docket entry no. 24). Plaintiff pursues no other cause of action.

Motion for Leave to Designate Responsible Third Party

Pending before the Court is Defendants' Motion for Leave to Designate Responsible Third Party (docket entry no. 50). Pursuant to Texas Civil Practice and Remedies Code, Section 33.004(a), defendants seek to designate J.E. Kingham Construction Co. as a responsible third party. According to the motion, J.E. Kingham Construction Co. constructed the Diboll facility, including the suspended ceiling at issue in this case. Defendants allege the ceiling assembly suspension system fell as a result of J.E. Kingham Construction Co.'s actions and/or omissions in constructing the facility. As such, defendants argue the jury is permitted to determine percentage of responsibility of this responsible third party pursuant to Chapter 33 of the Texas Practice and Remedies Code.

Analysis

Section 33. 004 of the Texas Civil Practice and Remedies Code provides that a "defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party." A "responsible third party" is defined as:

[A]ny person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these.

3

TEX. CIV. PRAC. & REM. CODE § 33.011(6). Once designated, a responsible third party is added to the list of persons the trier of fact may consider for purposes of apportioning fault in "any action based on tort." *Id*. §§ 33.022, 33.033(a). Designating a responsible third party can affect the amount of a plaintiff's recovery because a defendant "is liable to a claimant only for the percentage of damages found by the trier of fact equal to that defendant's percentage of responsibility with respect to the . . . harm for which the damages are allowed." *Id*. § 33.013(a).

In deciding whether the Texas proportionate responsibility statute applies to federal civil rights actions, the court turns to 42 U.S.C. § 1988. That statute provides, in relevant part:

> The jurisdiction in civil and criminal matters conferred on the district courts by [federal law] for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and the statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause[.]

42 U.S.C. § 1988(a). The express language of § 1988 makes clear that the remedial provisions of the statute are intended to *protect* persons in their civil rights. *See Wright v. Reynolds*, 703 F. Supp. 583, 592 (N.D. Tex. 1988) (emphasis added).

Federal courts have not hesitated to apply state laws, such as wrongful death and survival statutes, to further the purposes of § 1983. *See, e.g., Hall v. Wooten*, 506 F.2d 564, 569 (6th Cir. 1974) (Kentucky survival statute); *Brazier v. Cherry*, 293 F.2d 401, 409-10 (5th Cir.), *cert. denied*, 368 U.S. 921 (1961) (Georgia survival statute); *Pritchard v. Smith*, 289 F.2d 153, 158 (8th Cir.

1961) (Arkansas survival statute); *Smith v. Wickline*, 396 F. Supp. 555, 560 (W.D. Okla. 1975)

(Oklahoma wrongful death statute); *Galindo v. Brownell*, 255 F. Supp. 930, 931 (S.D. Cal. 1966)

(California wrongful death statute). To that end, some district courts have also concluded that the

designation of a responsible third party under § 33.004 does not conflict with the Federal Rules of

Civil Procedure and is therefore permissible in diversity cases.[1] *See, e.g., Eisenstadt v. Tel. Elecs.*

*Corp.*, 2008 WL 4452999, at *1 (N.D. Tex. Sept. 30, 2008); *Kelly v. Pacific Cycle, Inc.*, 2007 WL

4226922, at * 1 (N.D. Tex. Nov. 29, 2007). The same is not true, however, for suits involving

causes of action arising under federal statutory law only like the instant case.

Application of the Texas proportionate responsibility scheme in this case involving

allegations of deliberate indifference would frustrate the two primary goals of 42 U.S.C. § 1983 —

compensation and deterrence. *See Moran v. Summers*, 2016 WL 1610611, at *2 (W.D. Tex. Apr.

20, 2016) (citing *Mims v. Dallas County*, 2006 WL 398177, at *6 (N.D. Tex. Feb. 17, 2006)) (citing

*Robertson v. Wegmann*, 436 U.S. 584, 590 (1978)) ("The policies underlying § 1983 include

compensation of persons injured by deprivation of federal rights and prevention of abuses of power

by those acting under color of state law."))). "Permitting the designation of a responsible third party

would allow the joined defendants to avoid joint and several liability for any wrongful conduct,

which in turn would likely prevent the plaintiff from receiving full compensation for their injuries."

*Moran*, at * 2. "Such a result 'would benefit the [defendants], the parties whose conduct is regulated

---

[1] In *Davis v. Dall. Cty.,* the District Court concluded, however, that the designation of a responsible third party under § 33.004 does not conflict with the Federal Rules of Civil Procedure and was permissible where the Court had federal subject matter jurisdiction. 2007 WL 2301585, at *2 (N.D. Tex. Aug. 10, 2007). In this case, plaintiffs alleged both common law negligence against Dallas County and InfoIntegration and civil rights violations against Dallas County. *See also Ramirez v. Abreo*, 2010 WL 11586455 (N.D. Tex. 2010) (discusses applicability of § 33.004 in cases that involved both § 1983 claims and state law claims; § 33.004 does not lose its applicability to plaintiffs' state law claims merely because those claims are asserted along with a federal claim).

by 42 U.S.C. § 1983, not plaintiffs, the parties protected by statute,' and thus would be 'inconsistent with the Constitution and laws of the United States.'" *Id*. (citing *Mims*, at *6).

Based on the foregoing, this court finds it would be inappropriate to designate J.E. Kingham Construction Company as a responsible third party pursuant to Civil Practice and Remedies Code § 33.04. This is consistent with the weight of authority holding theories of comparative negligence and contribution inapplicable to federal constitutional rights violations. *See, e.g., Nicols v. Knox County, Tenneesse*, 2016 WL 9149585, at *1 (E.D. Tenn. 2016); *Cordova v. City of Albuquerque*, 816 F.3d 645, (10th Cir. 2016); *Sahota v. Cobb*, 2015 WL 6835480, at *3 (W.D. La. Nov. 6, 2015) (citing *Blair v. Harris*, 993 F.Supp.2d 721, 727 (E.D. Mich. 2014)); *Blair v. Harris*, 993 F.Supp.2d 721, 727 (E.D. Mich. 2014); *Baker v. Union Township, Ohio*, 2015 WL 6468386, at *3 (S.D. Ohio 2015); *Hepburn v. Athelas Inst., Inc.*, 324 F.Supp.2d 752, 759 (D. Md. 2004); *McHugh v. Olympia Entm't*, 37 F. App'x 730, 736-37 (6th Cir. 2002); *Burger v. Parish of St. Tammany*, 1995 WL 317125, at *3 (E.D. La. May 24, 1995).

## Conclusion

The court stops short of announcing a categorical rule that Texas' proportionate liability scheme is never applicable in federal question cases applying federal statutory law. However, for the purposes of this civil rights claim, the Court finds it would be inconsistent with federal law to permit the defendants to invoke § 33.004 to avoid joint and several liability and in turn avoid fully compensating plaintiff for his injuries.

It is **ORDERED** that Defendants' Motion for Leave to Designate Responsible Third Party (docket entry no. 50) is **DENIED**.

SIGNED this 2nd day of December, 2019.

Zack Hawthorn
United States Magistrate Judge